UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **WILLIEMAE CUNNINGHAM,** | } |
| | } |
| **Plaintiff,** | } |
| | } |
| v. | } Case No.: 2:13-cv-00295-MHH |
| | } |
| **CAROLYN W. COLVIN, Acting** | } |
| **Commissioner, Social Security** | } |
| **Administration,** | } |
| | } |
| **Defendant.** | } |

## MEMORANDUM OPINION

Plaintiff Williemae Cunningham seeks review of the decision of the Commissioner of the Social Security Administration denying her claim for supplemental security income. *See* 42 U.S.C. § 1383(c). After careful review, the Court affirms the Commissioner's decision.

## STANDARD OF REVIEW

The scope of review in this matter is limited. "When, as in this case, the ALJ denies benefits and the Appeals Council denies review," the Court "review[s] the ALJ's 'factual findings with deference' and her 'legal conclusions with close scrutiny.'" *Riggs v. Comm'r of Soc. Sec.*, 522 Fed. Appx. 509, 510-11 (11th Cir. 2013) (quoting *Doughty v. Apfel,* 245 F.3d 1274, 1278 (11th Cir. 2001)).

The Court must determine whether there is substantial evidence in the record to support the ALJ's findings.  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004).  In making this evaluation, the Court may not "reweigh the evidence or decide the facts anew," and the Court must "defer to the ALJ's decision if it is supported by substantial evidence even if the evidence may preponderate against it."  *Gaskin v. Comm'r of Soc. Sec.*, 533 Fed. Appx. 929, 930 (11th Cir. 2013).

With respect to the ALJ's legal conclusions, the Court must determine whether the ALJ applied the correct legal standards.  If the Court finds an error in the ALJ's application of the law, or if the Court finds that the ALJ failed to provide sufficient reasoning to demonstrate that the ALJ conducted a proper legal analysis, then the Court must reverse the ALJ's decision.  *Cornelius v. Sullivan*, 936 F.2d 1143, 1145–46 (11th Cir. 1991).

## PROCEDURAL AND FACTUAL BACKGROUND

Ms. Cunningham applied for social security income benefits under Title XVI on September 21, 2009.  (R. 119).  She alleges that her disability began on November 1, 2006. (*Id.*).  The Social Security Administration initially denied Ms. Cunningham's application on December 22, 2009.  (R. 82–88).  At Ms.

Cunningham's request, an Administrative Law Judge ("ALJ") held a hearing on September 21, 2011.  (R. 30–73).

Ms. Cunningham was 45 years old at the time of her hearing.  (Doc. 10, p. 4).  She had an eleventh grade education, was able to communicate in English, and did not have past relevant work experience.  (Doc. 10, p. 4).  In his October 25, 2011 decision, the ALJ found that Ms. Cunningham had not engaged in substantial gainful activity since September 3, 2009.  (R. 16).  The ALJ concluded that Ms. Cunningham suffers from the following severe impairments: migraines, endometriosis, hypertension, and depression.  (R. 16).  However, the ALJ determined that Ms. Cunningham does not have an impairment or combination of impairments listed in or medically equal to one listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. 16).  The ALJ found that Ms. Cunningham retained the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. § 416.967(b), and she could do occasional bending, stooping, and twisting; no driving; and no climbing or working from unprotected heights.  (R. 18).  The ALJ also stated that Ms. Cunningham should be restricted to simple, repetitive, non-complex tasks.  (R. 18).

Considering Ms. Cunningham's age, education, work experience, and RFC, the ALJ determined that jobs exist in significant numbers in the national economy that she could perform, including small parts assembler, inspector, and packer.  (R.

25).  Accordingly, the ALJ concluded that Ms. Cunningham is not disabled under section 1614(a)(3)(A) of the Social Security Act.  (R. 26).

In making his findings, the ALJ examined the medical record, which revealed that Ms. Cunningham underwent a total hysterectomy with a left salpingo-oophorectomy on November 30, 2006 to address enlarged fibroids.  The fibroids caused pelvic pain and abnormal uterine bleeding.  (R. 19, 167–68).  In June of 2007, Ms. Cunningham developed abdominal pain due to a cyst on her remaining ovary.  (R. 19, 182).  A CT scan of Ms. Cunningham's abdomen and pelvis in March 2009 indicated no gross abnormality.  (R. 20, 175).

The ALJ noted fluctuations in Ms. Cunningham's blood pressure from September 24, 2010 to June 17, 2011.  (R. 20, 230, 239).  The ALJ also reviewed medical records from September 2010 indicating treatment for neck pain and depression.  (R. 20, 230).

The ALJ reviewed a November 19, 2009 report from consultative examiner Dr. Rishi K. Agarwal.  (R. 20, 193–96).  Dr. Agarwal's notes state that Ms. Cunningham has a long history of migraine headaches. In 2009, she rated her pain as a ten on a ten-point scale.  (R. 193).  Dr. Agarwal reviewed Ms. Cunningham's complaints of pain associated with endometriosis.  (*Id.*).  Dr. Agarwal indicated that Ms. Cunningham could perform a number of daily activities.  She could get out of bed and out of chairs, and she could climb steps without assistance.  (*Id.*).

On the other hand, Dr. Agarwal found that Ms. Cunningham needed assistance to heel-toe walk.  (R. 195).  Dr. Agarwal's report indicates that Ms. Cunningham's range of motion was normal with good muscle strength in bilateral upper and lower extremities.  (*Id.*).  Dr. Agarwal opined that Ms. Cunningham could stand or walk for less than an hour with frequent breaks and could sit for less than an hour without frequent breaks.  In addition, Dr. Agarwal opined that Ms. Cunningham should avoid heavy lifting.  (R. 20, 193–96).  The ALJ gave significant weight to Dr. Agarwal's opinion because the doctor's conclusions were consistent with Ms. Cunningham's treatment records.  (R. 23).[1]

The ALJ also examined treatment notes from Dr. Sally A. Gordon, who performed a consultative psychological examination of Ms. Cunningham on December 3, 2009.  (R. 20–21, 197–99).  During the examination, Ms. Cunningham complained of chronic pain associated with her migraines and endometriosis.  (R. 197).  Ms. Cunningham stated that this pain ranges from eight to ten on a ten-point scale.  (*Id.*).  Ms. Cunningham also reported that she had been depressed for the preceding two years due to her functional limitations associated with endometriosis and "family problems."  (*Id.*).  Dr. Gordon found that Ms.

---

[1] The ALJ stated that "Dr. Agarwal had the opportunity to review the claimant's medical evidence of record, and thus had significant basis for his determinations." (R. 23).  This finding by the ALJ is not consistent with Dr. Agarwal's notes, which state, "No medical records were made available. . . . The absence of medical records means that the above-noted diagnoses are based upon patient reporting alone." (R. 196).

5

Cunningham had no trouble understanding questions and test instructions. (R. 198). Ms. Cunningham was "sad and tearful" during the examination, but her "insight into difficulties was good." (R. 198). Ms. Cunningham was "alert and attentive[,]" and her memory was intact, but her mental processing was slow. (R. 198).

Based upon her examination, Dr. Gordon diagnosed Ms. Cunningham with major depressive disorder with a single moderate episode; generalized anxiety disorder; panic disorder without agoraphobia; insomnia related to anxiety and pain; and pain disorder associated with physiological factors and her medical condition. (R. 199). Dr. Gordon also diagnosed migraines and endometriosis. (R. 199). Dr. Gordon concluded that Ms. Cunningham "should be able to learn and remember work instructions. However, her concentration and short-term memory are likely to be poor, and she is likely to be distracted by pain and psychological issues." (R. 199). Dr. Gordon also found that Ms. Cunningham "should be able to interact appropriately with coworkers and supervisors, but she is likely to be withdrawn much of the time." (R. 199). According to Dr. Gordon, Ms. Cunningham "is likely to have difficulty responding adaptively to work pressures due to her medical and psychological issues." (R. 199). The ALJ accorded Dr. Gordon's

opinion significant weight because he found that Dr. Gordon's report was consistent with Ms. Cunningham's treatment records. (R. 23–24).[2]

The ALJ also reviewed the opinion of Dr. Robert Estock who consultatively reviewed Ms. Cunningham's medical records and completed a psychiatric review technique and a mental RFC assessment. (R. 21, 210–226). "Dr. Estock opined [Ms. Cunningham] had only mild restriction in activities of daily living; mild difficulties in maintaining social functioning; and moderate difficulties in maintaining concentration, persistence, and/or pace." (R. 21, 220). Furthermore, Dr. Estock opined that Ms. Cunningham could manage simple tasks, maintain attention; handle a simple work routine; complete an 8 hour workday with customary breaks; make short term work related decisions; interact with the public, coworkers and supervisors; handle infrequent, gradual changes in the work environment; and set simple short term work related goals. (R. 21, R. 226).

The ALJ reviewed the opinion of Jeremy Allen, D.O., who examined Ms. Cunningham on September 2, 2011 at the request of her attorney. (R. 21, 245–251). Dr. Allen noted that Ms. Cunningham was independent in all her activities of daily living and that she cared for her grandchildren for about 4 hours a day. (R. 245). Furthermore, Dr. Allen commented that Ms. Cunningham could get on and

---

[2] The ALJ stated that "Dr. Gordon had the opportunity to review the claimant's medical evidence of record, and thus had significant basis for her determinations." (R. 23). This finding is inconsistent with Dr. Gordon's report, which states that "[n]o medical evidence of record was available for review and consideration in the overall assessment of the claimant." (R. 197).

off the exam table with ease; remove and replace her shoes easily; heel and toe walk; and squat and bend with normal limits. Dr. Allen found that Ms. Cunningham had normal range of motion and normal strength and reflexes. (R. 22, 246). Dr. Allen diagnosed Ms. Cunningham with chronic pelvic pain, migraine headaches, fatigue, weakness, and depression. (R. 246).

On a form dated August 30, 2011 (three days prior to Dr. Allen's examination), Dr. Allen opined that Ms. Cunningham could lift and/or carry 10 pounds occasionally; sit for 5 hours in an 8 hour work day; occasionally push, pull, climb and balance; and perform gross or fine manipulation. (R. 247). Dr. Allen concluded that Ms. Cunningham's pain would be distracting to adequate performance of daily activities or work and could cause the total abandonment of tasks. (*Id.*). Dr. Allen found that fatigue/weakness was present to such an extent that it would affect the performance of physical activities and could cause the abandonment of tasks. (R. 248–251). The ALJ assigned only some weight to Dr. Allen's opinion because he found that several of Dr. Allen's findings were inconsistent with Dr. Allen's notes (recorded three days later), particularly in relation to Ms. Cunningham's activities of daily living. (R. 24).

On December 20, 2012, the ALJ's decision became the final decision of the Commissioner of the Social Security Administration when the Appeals Council refused to review the ALJ's decision. (R. 3). Having exhausted all administrative

remedies, Ms. Cunningham filed this action for judicial review pursuant to §1631(c)(3) of the Social Security Act. *See* 42 U.S.C. § 1383(c)(3).

## ANALYSIS

To be eligible for disability insurance benefits, a claimant must be disabled. *Gaskin v. Comm'r of Soc. Sec.*, 533 Fed. Appx. 929, 930 (11th Cir. 2013). "A claimant is disabled if he is unable to engage in substantial gainful activity by reason of a medically-determinable impairment that can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months." *Id.* (citing 42 U.S.C. § 423(d)(1)(A)).

A claimant must prove that he is disabled. *Id.* (citing *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003)). To determine whether a claimant is disabled, the Social Security Administration applies a five-step sequential analysis. *Gaskin*, 533 Fed. Appx. at 930.

> This process includes a determination of whether the claimant (1) is unable to engage in substantial gainful activity; (2) has a severe and medically-determinable physical or mental impairment; (3) has such an impairment that meets or equals a Listing and meets the duration requirements; (4) can perform his past relevant work, in the light of his residual functional capacity; and (5) can make an adjustment to other work, in the light of his residual functional capacity, age, education, and work experience.

*Id.* (citation omitted). "The claimant's residual functional capacity is an assessment, based upon all relevant evidence, of the claimant's ability to do work

despite his impairments." *Id.* at 930 (citing *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); 20 C.F.R. § 404.1545(a)(1)).

Ms. Cunningham argues that she is entitled to relief from the ALJ's decision because: (1) the ALJ failed to draw proper inferences from the opinions of Dr. Agarwal and Dr. Gordon, to which the ALJ accorded "significant weight" (Doc. 10, pp. 9–10); and (2) the ALJ improperly discounted the opinion of Ms. Cunningham's treating physician, Dr. Allen. (Doc. 10, p. 13). Neither argument is persuasive.

Ms. Cunningham argues that, while the ALJ accorded significant weight to the opinions of Dr. Agarwal and Dr. Gordon, he drew incorrect inferences from some of the findings in those opinions. Ms. Cunningham points to specific findings in Dr. Agarwal's report and a separate statement by the vocational expert who testified at Ms. Cunningham's hearing, which Ms. Cunningham believes undermine the ALJ's final decision. (Doc. 10, p. 9). Dr. Agarwal opined that Ms. Cunningham could "walk for [less than] an hour with frequent breaks" and "sit for [less than] an hour with frequent breaks." (R. 196). Ms. Cunningham claims that Dr. Agarwal's conclusion would preclude finding that she was able to work because he "indicated a less than sedentary level of exertion due to an inability to complete a full eight hour work day." (Doc. 10, p. 9). Ms. Cunningham reaches this conclusion by referencing a part of the vocational expert's testimony in which

the expert stated that if Ms. Cunningham required an above average number of breaks, she would be incapable of sustaining work. (Doc. 10, p. 9). Therefore, Ms. Cunningham believes that the ALJ made a mistake by failing to conclude from Dr. Agarwal's findings and the vocational expert's testimony that she was disabled. (Doc. 10, p. 10–11).

Ms. Cunningham draws one conclusion from two isolated pieces of evidence in the record, but substantial evidence supports the ALJ's alternative conclusion. First, Dr. Agarwal's opinion did not indicate a less than sedentary level of exertion as Ms. Cunningham suggests. (R. 196). Dr. Agarwal did not state in his treatment notes that Ms. Cunningham would be unable to complete a full 8-hour workday. (R. 193–196). In fact, many of Dr. Agarwal's findings suggest that Ms. Cunningham could perform sedentary work. For example, Dr. Agarwal noted that Ms. Cunningham could accomplish her daily living activities on her own; she had muscle strength of 5/5 in bilateral upper and lower extremities; and she could move with a normal unstressed gait. (R. 193–196). Although Ms. Cunningham had some discomfort and trouble getting on and off the exam table and needed assistance to heel-toe walk, those ailments alone do not equate to an inability to work. Furthermore, Dr. Agarwal's diagnosis of migraine headaches and endometriosis was based on "patient reporting alone," without consulting medical records. (R. 196).

The vocational expert's testimony, taken as a whole, also supports the ALJ's findings. As the ALJ explained:

> [T]he undersigned Administrative Law Judge asked Mr. Long, the vocational expert, to consider the claimant's age, education, work experience, and residual functional capacity. Mr. Long testified that given all of these factors, Ms. Cunningham would be able to perform the requirements of representative occupations such as small parts assembler, inspector, and packer.

(R. 25). While Ms. Cunningham cites an answer the vocational expert gave to a hypothetical question (R. 68),[3] the testimony taken as a whole supports the ALJ's decision.

Ms. Cunningham also argues that the ALJ improperly discounted the opinion of Dr. Allen. Ms. Cunningham argues that Dr. Allen's opinion is entitled to greater weight because he was one of her treating physicians at Cooper Green Hospital. (Doc. 10, p. 13–14). The record contains documentation from several visits to Cooper Green Hospital. (R. 167–192, 200–209, 238–243). Dr. Allen did not treat Ms. Cunningham during any of these visits. The record demonstrates that Dr. Allen examined Ms. Cunningham only once on September 2, 2011 at the request of Ms. Cunningham's attorney. (R. 245). Dr. Allen did not have an ongoing treatment relationship with Ms. Cunningham. (*Id.*). Therefore, Dr. Allen

---

[3] The ALJ asked Mr. Long if the employee needs to be absent from the job site for "two/three hours," would that restriction preclude her from work. (R. 68). Mr. Long replied, "Yes, your honor." (R. 68). Dr. Agarwal's notes do not state that Ms. Cunningham would need to be absent from the worksite for such a long period of time.

is not a treating physician. *See Nyberg v. Comm'r of Soc. Sec.*, 179 Fed. Appx. 589, 591 n.3 (11th Cir. 2009) ("A 'treating source' (i.e., a treating physician) is a claimant's own physician, psychologist, or other acceptable source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you.") (quoting 20 C.F.R. § 404.1502). Instead, Dr. Allen is a one-time examiner, and as such, the ALJ was not required to give any deference to Dr. Allen's opinion. *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987). Moreover, an "ALJ may reject the opinion of any physician when the evidence supports a contrary conclusion." *McCloud v. Barnhart*, 166 Fed. Appx. 410, 418 (11th Cir. 2006) (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 2983)).

The ALJ accorded only some weight to Dr. Allen's opinion because Dr. Allen's findings regarding Ms. Cunningham's pain, fatigue, and weakness were inconsistent with Dr. Allen's objective examination findings, particularly with respect to Ms. Cunningham's activities of daily living, which include caring for her two grandchildren daily. (R. 24). Dr. Allen observed that Ms. Cunningham had a normal gait, could walk heel toe, had normal strength in upper and lower extremities, no guarding at the lower quadrants of her abdomen, could get off the exam table easily, and take her shoes on and off with ease. (R. 246). Despite an overall unremarkable medical report, Dr. Allen opined that Ms. Cunningham had a

reduced RFC, likely would abandon tasks altogether, and could only sit for 5 hours and stand for 0 hours in an 8 hour work day. (R. 246–247). The ALJ found this portion of Dr. Allen's examination to be inconsistent with the rest of Dr. Allen's report and the medical evidence as a whole. (R. 23).

The ALJ noted that on September 1, 2009, Ms. Cunningham saw Dr. Carol Leitner, who indicated that Ms. Cunningham declined antidepressants. (R. 203). Furthermore, Ms. Cunningham's Lortab for her pain was discontinued due to marijuana abuse. (*Id.*). The next month, on October 21, 2009, Ms. Cunningham saw her gynecologist, Dr. Yocunda Clayton. Dr. Clayton examined Ms. Cunningham's abdomen, extremities, vagina, and neurological system and found them all to be normal. (R. 201). Ms. Cunningham did not return to the hospital until July 9, 2010, when she saw Dr. Mark Wilson. While Ms. Cunningham stated in her testimony that her "blue card" permitted her to see a doctor at Cooper Green Hospital for $4.00, (R. 55), she did not seek consistent treatment for her alleged disabling complaints. Upon review of the record and Dr. Allen's examination notes, the ALJ afforded some but not controlling weight to Dr. Allen's opinion. The ALJ did not err in doing so based on the medical evidence as a whole. *See e.g.*, *Russell v. Astrue*, 331 Fed. Appx. 678, 681–82 (11th Cir. 2009) (ALJ did not err in affording little weight to examiner's opinion where he appropriately found

that the claimant's other medical records failed to support the opinion and that the doctor's own examination contradicted his opinion).

Having examined the available evidence thoroughly, the ALJ determined that Ms. Cunningham is not disabled. That finding rests on substantial evidence. The Court will not reweigh the evidence or substitute its judgment for that of the Commissioner.

## **CONCLUSION**

For the reasons outlined above, the Court concludes that substantial evidence supports the ALJ's decision, and the ALJ applied proper legal standards. Accordingly, the Court AFFIRMS the decision of the Commissioner. The Court will issue an order consistent with this memorandum opinion.

**DONE** and **ORDERED** this September 29, 2014.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE